PHAR–MOR, INC., Plaintiff,

v.

COOPERS & LYBRAND, Defendant.

The Official Unsecured Creditor's Committee of Phar–Mor, Inc., Appellants,*

Ivan Bowen, II, Robert J. Carr, Vernon L. Carson, Merle T. Carson, Robert M. Chase, Stephen M. Ehrlichman, Robert J. Frisby, Ronald Goldberg, Cecile Guthman, Howard D. Hirsh Revocable Trust, Walter Jacobson, Diane Dybsky Jacobson, Robert A. Judelson, Edward L. Lembitz Profit Sharing Plan, Marc Levenstein, Angela Levenstein, Maurice Sporting Goods, Inc., Protective Insurance Company, Robert A. Riesman, Jr., Philip E. Rollhaus, Jr., Jeanette M. Shea Trust, Spiegel, Inc. Supplemental Employee Retirement Plan for the Benefit of John J. Shea, Helen Shire, Jack Shire, Bernard M. Susman Revocable Trust, Glen R. Traylor, Union League Boys & Girls Clubs, Richard E. Weiss, John B. Whitted, Jr., Stein Roe Investment Trust, Olympus Private Placement Fund, L.P., Vencap Hold[ings] [1987] PTE Ltd., Odyssey Partners, L.P., Kemper Total Return Fund, Kemper Growth Fund, Kemper Retirement Fund—Series I, Kemper Retirement Fund—Series II, Kemper Small Capitalization Equity Fund, Kemper Investment Portfolios—Growth Portfolios, Kemper Investment Portfolios—Total Return Portfolio, Lumbermens Mutual Casualty Company, Kemper Financial Services, Inc., New Economy Fund, Anchor Pathway Fund Growth Series, America Variable Insurance Series Growth Fund, Albert H. Bitzer, Jr. Revocable Trust, The Bowen Family Partnership, Inc., Select Equity Fund of the Collective Trust Funds of the Northern Trust Company, Growth Equity Fund-A of the Common Trust Funds of the Northern Trust Company, Steinroe Prime Equities, Andrew K. Block Trust No. 2, David A. Breskin,

* (Pursuant to Rule 12(a), F.R.A.P.)

Burton B. Kaplan, Arthur Charles Nielsen, Jr., Ralph M. Segall Trust, Mitchell Gold–Smith, Allan C. Lichtenberg Trust, Eva F. Lichtenberg, James D. Winship, M.S. Block 1985 Family Trust, Pagtip, Sheet Metal Workers Pension Fund, Intervenors.**

No. 93–3368.

United States Court of Appeals,
Third Circuit.

Argued Nov. 2, 1993.

Decided April 11, 1994.

Rehearing and Suggestion for Rehearing In Banc Denied June 6, 1994.***

** (Per Court's 10/21/93 Order)

*** Roth, J., would grant rehearing.

Abraham Singer (Argued), Pepper, Hamilton & Scheetz, Detroit, MI, for The Official Unsecured Creditors' Committee of Phar–Mor, Inc., appellant.

Paul A. Manion (Argued), James P. Hollihan, Robert J. Waine, Mary–Jo Rebelo, Manion, McDonough & Lucas, Pittsburgh, PA, for Phar–Mor, Inc., appellee.

Kathryn L. Simpson (Argued), Grogan, Graffam, McGinley & Lucchino, P.C., Pittsburgh, PA, for Coopers & Lybrand, appellee.

Arthur T. Susman, Timothy J. Storm, Susman, Saunders & Buehler, Chicago, IL, for intervenors, Plaintiffs in Bowen, et al. v. Shapira, et al.

Bernard D. Marcus, Scott D. Livingston, Marcus & Shapira, Pittsburgh, PA, for amicus curiae, Giant Eagle, Inc. and Giant Eagle of Delaware, Inc.

R. Eric Kennedy, Weisman, Goldberg & Weisman Co., L.P.A., Cleveland, OH, for amicus curiae, Brentwood Originals, Inc., et al.

Before: BECKER and STAPLETON, Circuit Judges, and RESTANI, Judge, U.S. Court of International Trade.[†]

† The Honorable Jane A. Restani, Judge, U.S. Court

## OPINION OF THE COURT

BECKER, Circuit Judge.

This appeal presents the interesting and important question whether § 1109(b) of the Bankruptcy Code, 11 U.S.C. § 1109(b), which provides that a creditors' committee "may raise and may appear and be heard on any issue in a case [under Chapter 11]," gives a creditors' committee the unconditional right to intervene in a proceeding in federal district court which is "related to" a bankruptcy case. This question arises in the context of a lawsuit filed by Phar–Mor, Inc. against its auditors, the accounting firm of Coopers and Lybrand ("Coopers"), alleging that Coopers failed to detect and/or was itself involved in a massive scheme to defraud Phar–Mor, a scheme so large that it forced Phar–Mor into bankruptcy once it came to light.

The lawsuit between Phar–Mor and Coopers had originally been filed in state court but was later removed to federal court, and the Unsecured Creditors' Committee of Phar–Mor (the "Committee") sought to intervene pursuant to Federal Rule of Civil Procedure 24. Both Phar–Mor and Coopers opposed the Committee's motion. The central issue before the district court on the motion was whether § 1109(b) gave the Committee an absolute right to intervene in the lawsuit under Federal Rule of Civil Procedure 24(a)(1), which provides that a party shall be permitted to intervene when a statute of the United States confers an unconditional right to intervene. The Committee argued that § 1109(b) gave it such a right, relying on this court's decision in In re Marin Motor Oil, Inc., 689 F.2d 445 (3d Cir.1982), cert. denied, 459 U.S. 1207, 103 S.Ct. 1196, 75 L.Ed.2d 440 (1983), which held that § 1109(b) gives a creditors' committee an unconditional right to intervene in an adversary proceeding initiated by a trustee.

Phar–Mor and Coopers responded that § 1109(b) gave the Committee no right to intervene, and distinguished Marin. Section 1109(b), they contended, only applies to cases "under" Chapter 11, not those merely "related to" a Chapter 11 case; the Phar–Mor/Coopers lawsuit, which had been filed as

of International Trade, sitting by designation.

a state common law civil action and then removed to federal court pursuant to 28 U.S.C. § 1452, was in federal court only because it was "related to" a bankruptcy case. Phar–Mor and Coopers focussed on what they thought were two related, but distinct, limitations of *Marin*. First, they submitted, *Marin* held only that § 1109(b) gave creditors' committees a right to intervene in "adversary proceedings," yet the lawsuit was not an adversary proceeding but a common law civil action in federal district court. Second, Phar–Mor and Coopers argued that *Marin* held only that the right to intervene extended to adversary proceedings brought by a trustee "under" Chapter 11, and since the Phar–Mor/Coopers lawsuit did not arise "under" Chapter 11, but was merely "related to" a Chapter 11 case, *Marin* did not apply.

■ The district court agreed with Phar–Mor and Coopers, and denied the Committee's motion to intervene. We reverse. We conclude that the Phar–Mor/Coopers lawsuit is an adversary proceeding, and that, in light of *Marin*, § 1109(b) gives a creditors' committee the right to intervene in an adversary proceeding, like the Phar–Mor/Coopers lawsuit, which is "related to" a bankruptcy case.

## I. FACTS AND PROCEDURAL HISTORY

In July, 1992, Phar–Mor, one of the country's largest "deep-discount" drugstore chains, discovered that two of its executives, Michael Monus and Patrick Finn, had bilked it out of hundreds of millions of dollars. Believing that its auditors, Coopers, should have known what was going on, Phar–Mor sued Coopers in the Court of Common Pleas of Allegheny County (Pennsylvania) for fraud and malpractice, seeking in the neighborhood of $1 billion in damages.[1] Later that day, Phar–Mor filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Ohio.[2] About two months later, Coopers removed the state fraud and malpractice action to the United States District Court for the Western District of Pennsylvania pursuant to 28 U.S.C. § 1452(a), which allows a party to remove a cause of action "related to" a bankruptcy case from state court to federal district court.[3] The case is currently pending in that court.

The Committee moved to intervene in the now-federal lawsuit claiming, among other things, that it had an unconditional right to intervene under § 1109(b), which gives parties in interest an unconditional right to be heard on "any issue in a case under [Chapter 11]." The Committee argued that § 1109(b) gives it such a right because this court had held in *Marin* that § 1109(b) gives a creditors' committee an unconditional right to intervene in an adversary proceeding brought by a trustee in a Chapter 11 case. *See* 689 F.2d at 445. The district court denied the motion, holding that § 1109(b), as interpreted by *Marin*, does not give the Committee a right to intervene in a proceeding pending in federal district court, like the Phar–Mor/Coopers lawsuit, which is merely "related to" a bankruptcy case.[4]

---

1. According to Phar–Mor, the current damage estimates range from $883 million to $1.15 billion.

2. *In re Phar–Mor, Inc.*, Case No. 92–41599, is currently pending in the United States Bankruptcy Court for the Northern District of Ohio.

3. A number of other cases brought against Coopers for its involvement with Phar–Mor are currently pending before various federal courts. About twenty-three of these cases have been consolidated for pretrial purposes in the District Court for the Western District of Pennsylvania pursuant to transfer orders of the Judicial Panel of Multidistrict Litigation. *See, e.g., In re Phar–Mor, Inc. Sec. Litig.*, MDL–959 (J.P.M.L. February 17, 1993).

4. The Committee also argued that even if § 1109(b) did not give it an absolute right to intervene, it still had a right to intervene either under Federal Rule of Civil Procedure 24(a)(2), which allows intervention to someone who has an interest in a proceeding which is not adequately protected by the parties already in the lawsuit, or under Federal Rule of Civil Procedure 24(b), which gives the court discretion to grant intervention upon a timely motion when there is a common question of law or fact and granting intervention will not unduly delay or prejudice the parties already in the lawsuit. The district court rejected both of these bases for intervention. Because of our decision on the Rule 24(a)(1) issue, we need not reach them.

The Committee has timely appealed the district court's order denying the motion. We have jurisdiction because an order denying intervention of right is an appealable order. *See Marin,* 689 F.2d at 448–49. Because application of Rule 24(a)(1) requires the district court to construe the language of a statute, a purely legal question, our review of the district court's ruling on the Rule 24(a)(1) motion to intervene is plenary. *See Air Courier Conference/Int'l Comm. v. U.S. Postal Serv.,* 959 F.2d 1213, 1217 (3d Cir. 1992).

## II. *MARIN*

Federal Rule of Civil Procedure 24(a)(1) provides that upon timely application anyone shall be permitted to intervene in an action "when a statute of the United States confers an unconditional right to intervene." Fed. R.Civ.P. 24(a)(1). Whether § 1109(b) gives the Committee such an unconditional right to intervene in this litigation turns on our reading of *Marin.* As has been mentioned, this court held in *Marin* that § 1109(b) gives a creditors' committee an unconditional right to intervene in an adversary proceeding initiated by a trustee in a case under Chapter 11. In *Marin,* the debtor, Marin Motor Oil, Inc., filed a voluntary Chapter 11 petition and the trustee initiated two adversary proceedings—one to impose a constructive trust on a home bought with money borrowed from the debtor corporation by its owner, and another to pierce the debtor corporation's veil so as to extend the Chapter 11 proceedings to the Marins' other businesses and the Marins personally and bring the non-debtors' assets into the debtor's estate. 689 F.2d at 446–447. The creditors' committee, unhappy with the trustee's performance, moved to intervene in the adversary proceedings. *Id.* at 447. The trustee opposed the intervention, arguing that § 1109(b) was limited to "cases," [5] and that since the trustee was involved in "adversary proceedings," § 1109(b) did not apply. *Id.* at 450.

We rejected the trustee's argument, stating that § 1109(b) gave parties in interest an "unqualified" right to be heard, and, there-fore, the term "case" in § 1109 includes any adversary proceeding instituted by a trustee under Chapter 11. *Id.* at 451. We viewed such an interpretation of § 1109(b) not only as the one best supported by the legislative history, but also as the one that comported with the usual expectation of parties in interest "that they will have a right to be heard, ... by the tribunal adjudicating their interests." *Id.* at 450–51, 457.

Although a number of courts have agreed with *Marin*'s interpretation of § 1109(b), *see In re Neuman,* 124 B.R. 155, 159–160 (S.D.N.Y.1991); *In re D.H. Overmyer Telecasting Co.,* 53 B.R. 963, 975 (N.D.Ohio 1984), *aff'd without op.,* 787 F.2d 590 (6th Cir.1986); *cf. In re Sapolin Paints, Inc.,* 6 B.R. 582, 583–84 (Bankr.E.D.N.Y.1980) (pre–*Marin* case employing a similar rationale to allow intervention in adversary proceedings pursuant to § 1109(b)), a number of courts have rejected it, *see, e.g., Fuel Oil Supply & Terminaling v. Gulf Oil Corp.,* 762 F.2d 1283, 1286–87 (5th Cir.1985); *995 Fifth Ave. Assocs., L.P. v. New York State Dep't of Taxation & Fin. (In re 995 Fifth Ave. Assocs., L.P.),* 157 B.R. 942, 951 (S.D.N.Y.1993); *In re CVC, Inc.,* 106 B.R. 478, 479 (Bankr. N.D.Ohio 1989); *In re Charter Co.,* 50 B.R. 57, 62 (Bankr.W.D.Tex.1985). These latter courts have held that § 1109(b) does not give a creditors' committee an unconditional right to intervene in *any* adversary proceedings, not even those that are brought "under" Chapter 11.

The courts rejecting *Marin* have advanced three reasons why *Marin*'s interpretation of the scope of § 1109(b) is incorrect. First, Congress has consistently drawn a distinction between bankruptcy "cases" and "adversary proceedings" related to them in other parts of the bankruptcy statutory scheme. Second, courts have construed Rule 24(a)(1) narrowly; these courts have been reluctant to interpret statutes to grant an unconditional right to intervene to private parties. Third, Bankruptcy Rule 7024 and its accompanying advisory committee note indicate that Congress was aware of a distinction between cases and adversary proceedings

---

**5.** The term "case" refers to the general administrative proceedings in bankruptcy—that is, the actual bankruptcy case filed under the Bankruptcy Code.

and that Congress intended to differentiate between them in the context of intervention.[6]

According to the courts critical of *Marin*, these legislative and judicial developments indicate that Congress was aware of the distinction between adversary proceedings and cases, and deliberately did not extend the right to intervene to adversary proceedings. These courts believe that Congress intended that motions to intervene under § 1109(b) would be controlled by Rule 24(a)(2) rather than Rule 24(a)(1).

A leading treatise on bankruptcy has also criticized *Marin*. *Collier on Bankruptcy* has taken the position that the *Marin* panel probably interpreted the legislative history of § 1109(b) incorrectly, and that the case law holding that § 1109(b) does not grant an automatic right to intervene under Rule 24(a)(1) "appears to be the better view." 9 *Collier on Bankruptcy* ¶ 7024.03 (15th ed. 1993). According to that treatise, if Congress had meant for section 1109(b) to be so broadly construed, it would have used a word other than "case." 5 *Id.* ¶ 1109.02. *Collier* has pointed out that since at least as far back as 1973, the Bankruptcy Rules drew a distinction between a "case" and a "proceeding." *Id.* A "case" is commenced by the filing of a petition under the Bankruptcy Code. *Id.* In contrast, any disputed matter within the case is either a contested matter, which is commenced by filing a motion, or an adversary proceeding, which is commenced by filing a complaint. *Id.* According to *Collier*, Congress must have been aware of the specialized use of the term "case" when it created § 1109(b), and, by limiting § 1109(b) intervention to "cases", Congress meant to allow intervention as of right only in those proceedings involving the administration of the bankruptcy case and not any disputed matter within the bankruptcy case.

Nevertheless, *Marin* remains binding precedent, and whether or not it is the better view, this Court's internal operating procedures bar us from overruling it. *See* I.O.P. 9.1.[7] Recognizing this limitation on our review of *Marin*, Phar–Mor and Coopers seek to limit its reading, contending that the substantive right to intervene in adversary proceedings under § 1109(b) recognized in *Marin* extends only to adversary proceedings brought "under" Chapter 11, not to common law malpractice actions "related to" a case under Chapter 11. They attempt to distinguish *Marin* by arguing that it merely held that the term "case" includes *some* adversary proceedings, but that since the adversary proceedings in *Marin* were proceedings "under" Chapter 11, the case said nothing about proceedings "related to" a Chapter 11 case. In their submission, a holding that the Committee has an absolute right to intervene in the Phar–Mor/Coopers litigation—a proceeding which, in their view, even if an adversary proceeding at all, is merely "related to" a bankruptcy case—would constitute an unwarranted extension of *Marin*.

We must decide whether the limitations on *Marin* that Phar–Mor and Coopers have advanced here are consistent with the principles underlying § 1109(b) as interpreted by *Marin*. Both bases of limiting *Marin* that Phar–Mor and Coopers press here—the adversary proceeding/non-adversary proceeding distinction and the "related to"/"under" distinction—implicate some of the fundamental changes in bankruptcy jurisdiction that have occurred since this court decided *Marin*. Although these changes are familiar to many, they are essential background, and it is necessary to discuss them briefly before addressing Phar–Mor and Coopers' specific challenges to *Marin*'s reach.

### III. BANKRUPTCY JURISDICTION SINCE *MARIN*

*Marin* was decided under the jurisdictional scheme put in place as part of the Bank-

---

**6.** Bankruptcy Rule 7024 provides that "Rule 24 F.R.Civ.P. applies in adversary proceedings." The advisory committee note provides that:

A person may seek to intervene in the case under the Code or in an adversary proceeding relating to a case under the Code. Intervention in a case under the Code is governed by Rule 2018 and intervention in an adversary proceeding is governed by this rule. Interven-

tion in a case and intervention in an adversary proceeding must be sought separately.
Fed.R.Bankr.P. 7024, advisory committee note.

**7.** Phar–Mor and Coopers are of course free to seek its overruling by filing a petition for rehearing in banc or for certiorari. They have preserved their position by maintaining before us that *Marin* was wrongly decided.

ruptcy Reform Act of 1978 ("1978 Act"), which revamped traditional bankruptcy jurisdiction. Until 1978, the federal district courts served as bankruptcy courts. For many years, however, the district courts had automatically referred bankruptcy cases to referees who issued final orders appealable to the district court. Under this system, bankruptcy referees played a dual role: deciding disputes and administering bankruptcies. There was dissatisfaction with this system and, in the 1978 Act, Congress eliminated the referee system and established a bankruptcy court as an adjunct to each district court. The Article I bankruptcy courts were given jurisdiction to hear and issue final decisions in proceedings "arising under title 11 or arising in or related to cases under title 11." 28 U.S.C. §§ 1471(b), (c) (repealed 1984). These courts thus had the power to hear claims based on federal and state law.

In 1982, however, the Supreme Court declared the 1978 Act's grant of jurisdiction to the bankruptcy courts unconstitutional. *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). In *Marathon*, the Court held that the grant of jurisdiction in § 1471, including the power to decide proceedings "related to those arising under the bankruptcy laws," violated Article III of the Constitution. *Id.* at 85, 87, 102 S.Ct. at 2878, 2880. Congress, it reasoned, did not have the authority to grant jurisdiction to the Article I bankruptcy courts over proceedings "related to" a bankruptcy case involving rights created by state law which were independent or antecedent to the reorganization petition. *Id.* at 84, 102 S.Ct. at 2878. Fearing that its decision might spark the collapse of the bankruptcy system (because the decision effectively eliminated the existing bankruptcy apparatus), the Court declined to apply its holding retroactively; instead, it stayed the judgment for fourteen weeks to give Congress "an opportunity to reconstitute the

bankruptcy courts or to adopt other valid means of adjudication, without impairing the interim administration of the bankruptcy laws." *Id.* at 89, 102 S.Ct. at 2880.

Congress, however, failed to act by the time the stay expired. In order to avoid the total collapse of the bankruptcy system, the federal district courts adopted a model "Emergency Rule" as a local rule which went into effect on December 25, 1982. 1 *Collier* ¶ 3.01[1][b][6].[8] Under the Emergency Rule, Article III district judges exercised the entire scope of bankruptcy jurisdiction. The Emergency Rule allowed the district courts to refer bankruptcy cases to bankruptcy judges for final decision, subject to appeal to the district court. The bankruptcy judges could not, however, make final decisions on matters that were merely "related to" bankruptcy cases (unless the parties consented). "Related to" cases included traditional state law causes of action like those involved in the *Marathon* decision.

In July 1984 Congress enacted the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353, 98 Stat. 333 ("BAFJA"), which in many respects codified the Emergency Rule. The BAFJA provided that jurisdiction would be exercised in the first instance by the district court. The district courts could then refer bankruptcy cases to the bankruptcy courts. As before, the referral generally would occur automatically as provided by either local rule or a general order of reference. *See* 28 U.S.C. § 157.[9]

■ In order to satisfy the concerns of *Marathon*, the BAFJA introduced a new distinction into the jurisdictional scheme: "core" and "non-core" proceedings. *See* 28 U.S.C. § 157(b). Today, proceedings "arising under" title 11 or "arising in" title 11 cases are "core." *See, e.g., Barnett v. Stern*, 909 F.2d 973, 981 (7th Cir.1990) ("[A] proceeding is core under section 157 if it invokes

---

**8.** This Court adopted a rule which tracked the language of the model Emergency Rule. *See Cooper–Jarrett, Inc. v. Central Transport, Inc.*, 726 F.2d 93, 95 (3d Cir.1984).

**9.** In the District Court for the Western District of Pennsylvania, referral is accomplished by the General Order of Reference dated October 16,

1984, which provides that "any or all cases under Title 11 and any or all proceedings arising under Title 11 or arising in or related to a case under Title 11 ... are referred to the Bankruptcy Judges of this district for consideration and resolution consistent with law."

a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case."). By contrast, proceedings which are "related to" a bankruptcy case are non-core. *See In Re Meyertech Corp.,* 831 F.2d 410, 416 (3d Cir.1987); *In re Wood,* 825 F.2d 90, 96–97 (5th Cir.1987) ("If the proceeding does not invoke a substantive right created by the federal bankruptcy law and is one that could exist outside of bankruptcy it is not a core proceeding; it may be *related to* the bankruptcy because of its potential effect, but under section 157(c)(1) it is an 'otherwise related' or non-core proceeding."); *In re Yobe,* 75 B.R. 873, 875 (Bankr.W.D.Pa.1987) (drawing a distinction between "core" and "related" proceedings). Although the district court can refer both core and non-core proceedings to the bankruptcy judge pursuant to § 157(a) and the general order of reference, the bankruptcy court can only issue a final decision in core proceedings. *See* 28 U.S.C. § 157(b). In non-core proceedings, unless the parties consent, the bankruptcy judge can only issue recommendations to the district judge which are subject to de novo review. *See* 28 U.S.C. § 157(c).

Against this background, we now address the two bases on which Phar–Mor and Coo-pers ask us to distinguish *Marin.* We turn first to the contention that *Marin* does not reach the Phar–Mor/Coopers lawsuit because the lawsuit is not an adversary proceeding.

## IV. IS THE PHAR–MOR/COOPERS LAWSUIT AN ADVERSARY PROCEEDING?

Phar–Mor and Coopers have argued vigorously that because their lawsuit is simply a state law civil action removed to federal court solely because it was "related to" a bankruptcy case, it is not an "adversary proceeding," and that, consequently, *Marin* does not apply. We disagree, and hold that the Phar–Mor/Coopers lawsuit is an adversary proceeding.

■ The analysis is straightforward. Bankruptcy Rule 7001 identifies which proceedings are to be considered "adversary proceedings" (as opposed to "contested matters"). Bankruptcy Rule 7001(10) states that an adversary proceeding "is a proceeding . . . (10) to determine a claim or cause of action removed pursuant to 28 U.S.C. § 1452." Fed.R.Bank.P. 7001(10).[10] Since the Phar–Mor/Coopers lawsuit was removed pursuant to § 1452,[11] it is an adversary proceeding.

**10.** Section 1452 allows removal of civil actions arising under, arising in or related to a bankruptcy case. *See* 28 U.S.C. §§ 1452 & 1334. It is essentially undisputed that removal pursuant to § 1452 was appropriate because the Phar–Mor/Coopers lawsuit will have a direct and substantial impact on the size of Phar–Mor's asset pool available for distribution to creditors and therefore is "related to" the bankruptcy case pending in Ohio. *See Maritime Elec. Co. v. United Jersey Bank,* 959 F.2d 1194, 1211 (3d Cir. 1992) (opinion sur panel rehearing). Moreover, § 1334 confers jurisdiction on all district courts, including the District Court for the Western District of Pennsylvania. *See Id.* at 1211–12; *see also, Haworth, Inc. v. Sunarhauserman Ltd./Sunarhauserman Ltee.,* 131 B.R. 359, 362 (Bankr. W.D.Mich.1991) (a state law cause of action may be removed to a district different from the one in which the bankruptcy case is pending).

**11.** We note that once the district court found that removal was appropriate under § 1452, it should have referred the lawsuit to the bankruptcy court in the Western District of Pennsylvania pursuant to the General Order of Reference of October 16, 1984. Such reference should have been automatic since the General Order does not state that the bankruptcy case must be pending in the Western District of Pennsylvania, only that it must be related to a case under title 11. Thus, the case should have been docketed in the bankruptcy court in Pittsburgh as an adversary proceeding and given an adversary proceeding number. *See* Fed.R.Bank.P. 7010 form 16C. Afterwards, the district court could have withdrawn the reference for cause. 28 U.S.C. § 157(d); *e.g., Rota v. Swindler,* Civ.A. No. 90–6304, Bankr. No. 88–14333S, 1991 WL 15293 (E.D.Pa. February 5, 1991) (pre-petition action brought by debtor in state court, removed to bankruptcy court via § 1452(a), and then withdrawn to the federal district court). Such cause could easily have been shown since there were a number of pending proceedings brought by nondebtors against Coopers alleging similar or identical causes of action. *See In re Sevko, Inc.,* 143 B.R. 114, 117 (N.D.Ill.1992); *In re Wedtech Corp.,* 81 B.R. 237, 239 (S.D.N.Y.1987); *In re Enviro–Scope Corp.,* 57 B.R. 1005, 1008 (E.D.Pa.1985). Transferring the case to Ohio would have been unlikely since, on the record, the balance of convenience clearly weighed in favor of keeping the lawsuit in Pittsburgh.

For some reason, however, the district court simply retained the lawsuit on its docket. In a sense, then, the Phar–Mor/Coopers lawsuit is im-

■ Of course, this conclusion is correct only if the Bankruptcy Rules, rather than the Federal Rules of Civil Procedure, apply to the Phar–Mor/Coopers lawsuit. We believe, however, that they do apply even though this case is not a core proceeding and is not in bankruptcy court. The Federal Rules of Civil Procedure "govern the procedure in the United States District Courts in all suits of a civil nature whether cognizable as cases at law or in equity or in admiralty, with the exceptions stated in Rule 81." Fed.R.Civ.P. 1. Rule 81 makes an exception for bankruptcy proceedings. *See* Fed.R.Civ.P. 81(a)(1) ("These rules do not apply to ... proceedings in bankruptcy ... except in so far [sic] as they may be made applicable thereto by rules promulgated by the Supreme Court of the United States."). At first glance, then, these rules seem to indicate that the Federal Rules of Civil Procedure do not apply to the Phar–Mor/Coopers lawsuit because federal jurisdiction over the lawsuit is based solely on bankruptcy jurisdiction under § 1334, and is, therefore, a proceeding in bankruptcy.

Unfortunately, the matter is not that simple. When Rule 81 was promulgated, the Bankruptcy Act of 1898 ("1898 Act") governed bankruptcy proceedings. At that time, the term "proceedings" referred only to matters arising directly from the substantive provisions of the bankruptcy law analogous to core proceedings ("summary matters") but not to matters related to a bankruptcy case analogous to non-core proceedings ("plenary matters"). *See Diamond Mortg. Corp. v. Sugar,* 913 F.2d 1233, 1240 (7th Cir.1990), *cert. denied,* 498 U.S. 1089, 111 S.Ct. 968, 112 L.Ed.2d 1054 (1991); *Windsor Communications Group, Inc. v. Grant,* 75 B.R. 713, 728–

29 (E.D.Pa.1985).[12] In 1978, Congress obliterated the distinction between summary and plenary matters by extending the bankruptcy courts' jurisdiction to all "civil proceedings arising under title 11 or arising in or related to cases under title 11." 28 U.S.C. § 1471(b) (repealed 1984). Had § 1471 (the pre–*Marathon* jurisdictional grant of the 1978 Act) remained in force, the argument would be strong that the Bankruptcy Rules rather than the Federal Rules of Civil Procedure apply to any proceeding related to a bankruptcy case.

*Marathon* and the BAFJA, however, revived the distinction between matters involving substantive bankruptcy law and those that are "related to" a bankruptcy case, a distinction similar to the summary/plenary distinction existing before the 1978 Act. An argument could therefore be made that the Federal Rules of Civil Procedure should govern non-core, "related to" proceedings just as they governed plenary matters before 1978. But courts have rejected such an argument largely because it is incompatible with the policies underlying the BAFJA. *Diamond,* 913 F.2d at 1240; *Windsor,* 75 B.R. at 732–33. Although the BAFJA may have created a two-tiered system, it was clearly not the intent of Congress to return to the same scheme of jurisdiction as that in the 1898 Act.

To find that the Federal Rules of Civil Procedure govern non-core, "related to" proceedings while the Bankruptcy Rules govern core (or "arising under") proceedings would create "a cumbersome dual procedural process ... whereby every time an adversary proceeding is commenced, the plaintiff would have to determine whether the underlying

properly before the district court. But when a district court retains a case that should have been referred to the bankruptcy court, it is treated as if there had been a proper withdrawal of reference. *See Anderson v. Federal Deposit Ins. Co.,* 918 F.2d 1139, 1142 (4th Cir.1990) (the local rule providing for automatic reference does not prevent the district court from exercising jurisdiction when it ignores the withdrawal of reference procedures; by retaining jurisdiction, "the district court effectively withdrew [the] matter from the bankruptcy judge to whom it otherwise would have been automatically referred for disposition by blanket order"); *see also Cooper–Jarrett,* 726 F.2d at 96 (when interpreting the referral procedures in the Emergency Rule, we

stated that when the district court did not follow those procedures and instead just held the case that it "should be considered a *sua sponte* withdrawal of reference"). We therefore treat the Phar–Mor/Coopers lawsuit as if it had been referred to the bankruptcy court and then withdrawn by the district court under § 157(d).

**12.** Rule 81 has not been substantively amended since 1971 despite the intervening changes in bankruptcy jurisdiction. Technical amendments were made in 1987 but, according to the advisory committee's note, no substantive change was intended.

action is 'core' or 'non-core' and follow the applicable set of procedural rules." *Windsor*, 75 B.R. at 723. Such a result would be incompatible with the efficient disposition of bankruptcy cases—the animating policy underlying the BAFJA. *Id.* at 732. "Implementation of the statutory framework of the BAFJA can be accomplished in a sensible and practical manner by having both the bankruptcy judges and the district court judges apply the same set of procedural rules in all proceedings having a nexus to a bankruptcy case, including proceedings arising under, arising in, and related to a bankruptcy case." *Id.*[13] These considerations have led courts to conclude that the Bankruptcy Rules apply to non-core, "related to" proceedings in district court. *Id.; Diamond*, 913 F.2d at 1240.

Analysis of the Bankruptcy Rules supports this conclusion. To begin with, nothing in the current Bankruptcy Rules specifically limits them to cases before the bankruptcy courts. Indeed, the amendment history of the Bankruptcy Rules indicates that they apply to proceedings before federal district courts. Before 1987, Bankruptcy Rule 1001, which defines the scope of the Bankruptcy Rules, stated that "[t]he Bankruptcy Rules and Forms govern procedure *in United States Bankruptcy Courts* in cases under chapters 7, 9, 11 and 13 of title 11 of the United States Code" (emphasis supplied). In 1987, the "in United States Bankruptcy Courts" language was removed; and Bankruptcy Rule 1001 now provides that "[t]he Bankruptcy Rules and Forms govern procedure in cases under title 11 of the United States Code." The advisory committee explained that the amendment in 1987 "makes

the Bankruptcy Rules applicable to cases and proceedings under title 11, whether before the district judges or the bankruptcy judges of the district." Fed.R.Bank.P. 1001 advisory committee note (1987).

A similar amendment was made to Rule 7001. Prior to 1987, Rule 7001 described adversary proceedings as proceedings "in a bankruptcy court." Fed.R.Bank.P. 7001 (1986). That language was excised from Bankruptcy Rule 7001 in 1987 and the current version contains no such limitation. *See* Fed.R.Bank.P. 7001 (1993); *Diamond*, 913 F.2d at 1241–42. Apparently today the bankruptcy rules can apply to proceedings pending before a federal district court.

Furthermore, we believe that nothing in the Bankruptcy Rules, and in Bankruptcy Rule 7001 in particular, suggests that the rules are limited to core (as opposed to non-core, "related to") proceedings.[14] To the contrary, the language of Bankruptcy Rule 7001 apparently reaches non-core, "related to" proceedings, including Bankruptcy Rule 7001(1), which covers "a proceeding ... to recover property," Fed.R.Bankr.P. 7001(1), and Bankruptcy Rule 7001(10), which, as has been mentioned, includes civil actions removed pursuant to § 1452. *See Diamond*, 913 F.2d at 1241 (debtors' non-core suit against attorneys for malpractice can be described as a proceeding to recover money or property and within the scope of Bankruptcy Rule 7001(1)).

The conclusion that the Bankruptcy Rules govern non-core proceedings in district courts is not a novel one. For example, courts have consistently held that Bankruptcy Rule 7004 (nationwide service of process) applies to both core and non-core proceed-

---

**13.** Another argument that could be made to support the application of the Bankruptcy Rules to the Phar–Mor/Coopers lawsuit is that the Supreme Court's decision not to amend the language "proceedings in bankruptcy" in Rule 81(a)(1) (or to indicate in the Bankruptcy Rules that they are limited to cases "arising under" the Bankruptcy Code) in light of the significant changes to bankruptcy law brought about by the BAFJA reflects the Court's intent to preclude application of the Federal Rules of Civil Procedure to any proceeding, whether core or non-core. *See Diamond*, 913 F.2d at 1240 n. 5.

**14.** Phar–Mor and Coopers have argued that the Bankruptcy Rules do not reach proceedings re-

lated to a title 11 case because Bankruptcy Rule 1001 says that the Bankruptcy Rules "govern procedure in cases under title 11 of the United States Code." We do not believe that this language means what Phar–Mor and Coopers suggest. It says nothing about applying only to cases "arising under" or "arising in." Indeed Phar–Mor and Coopers apparently concede that the Bankruptcy Rules govern cases "arising in" title 11, but the "cases under" language does not seem to include those cases more obviously than cases "related to" title 11. That is not to say that we believe the language clearly encompasses "related to" cases, but rather that it does not foreclose the possibility.

ings, including non-core, "related to" proceedings before federal district courts. *See Diamond,* 913 F.2d at 1243; *In re Outlet Co. Stores, Inc.,* 82 B.R. 694, 698 (Bankr. S.D.N.Y.1988); *In re GEX Kentucky, Inc.,* 85 B.R. 431, 434 (Bankr.N.D.Ohio 1987); *see also Windsor,* 75 B.R. at 732 (interpreting the reach of the Bankruptcy Rules under the Emergency Rule rather than the BAFJA). Also, one bankruptcy court within this circuit has held that Bankruptcy Rule 7013 (counterclaims) governs non-core proceedings withdrawn by the district court. *See In Re Merritt Logan, Inc.,* 109 B.R. 140, 144–45 (Bankr.E.D.Pa.1990).

We conclude, then, that the Bankruptcy Rules govern non-core, "related to" proceedings before a district court like the Phar–Mor/Coopers lawsuit, and, hence, our reliance on Part VII of those rules to characterize the Phar–Mor/Coopers litigation is appropriate. According to Bankruptcy Rule 7001(10), the Phar–Mor/Coopers lawsuit, which was removed pursuant to § 1452, is an adversary proceeding. Thus, to the extent that one of the requirements of *Marin* is that the Phar–Mor/Coopers lawsuit be an adversary proceeding, it has been met. We now consider whether § 1109(b) as interpreted by *Marin* applies to an adversary proceeding like the Phar–Mor/Coopers litigation which is a non-core, "related to" adversary proceeding before the district court.[15]

## V. DOES *MARIN* EXTEND TO ADVERSARY PROCEEDINGS "RELATED TO" A BANKRUPTCY CASE?

Phar–Mor and Coopers argue that, even assuming that their lawsuit is an adversary

proceeding, *Marin* interpreted § 1109(b) to apply only to adversary proceedings "under" Chapter 11 (core proceedings), and not to adversary proceedings "related to" a case under Chapter 11 (non-core proceedings). Since their lawsuit is merely a non-core, "related to" proceeding, they submit that, even after *Marin,* § 1109(b) still does not apply. We disagree.

First, Phar–Mor and Coopers can point to nothing in *Marin* itself indicating that the decision was limited to adversary proceedings "under" (i.e., "arising under") Chapter 11.[16] This is understandable because, when *Marin* was decided, there was no relevant difference between adversary proceedings that were "under" Chapter 11 and those that were "related to" Chapter 11. At the time of the decision, bankruptcy judges had jurisdiction under the 1978 Act to issue final decisions on proceedings "under" and "related to" title 11. *See* 28 U.S.C. § 1471(b) (repealed 1984). To be sure, the importance of the "under" and "related to" distinction was known at the time *Marin* was decided: *Marin* was filed on September 29, 1982; *Marathon* had been decided on June 28, 1982, 458 U.S. at 88, 102 S.Ct. at 2880; and the model Emergency Rule which made a "related to" and "under" distinction had been promulgated on September 23, 1982. *See Cooper–Jarrett,* 726 F.2d at 95.

The *Marathon* judgment, however, was stayed until October 4, 1982. 458 U.S. at 50, 102 S.Ct. at 2858. And the Emergency Rule did not take effect until December 25, 1982.

---

15. We also find no merit in Phar–Mor's contention that the use of the Bankruptcy Rules to help identify whether the Phar–Mor/Coopers lawsuit is an adversary proceeding for purposes of intervention under § 1109(b) would expand a substantive right, something impermissible under the enabling statute, *see* 28 U.S.C. § 2075. Such an argument is question begging, for it assumes that the scope of § 1109(b) does not include adversary proceedings like the Phar–Mor/Coopers lawsuit.

16. Phar–Mor and Coopers have taken the position that the panel in *Marin explicitly* limited the scope of the decision to adversary proceedings "arising under" Chapter 11. They point to language in the opinion in which the court emphasized that the term "this chapter" as used in

§ 1109(b) referred to cases under Chapter 11. *See* 689 F.2d at 449–450. But the court did not make such an observation to distinguish adversary proceedings "under" Chapter 11 from those that were "related to" Chapter 11. To the extent that there was an emphasis on cases "under" Chapter 11 in *Marin,* the emphasis was meant to distinguish reorganizations from liquidations—to show that Congress intended creditors' rights to be broader when the debtor chose reorganization. *Id.* at 450. The *Marin* interpretation of the phrase "this chapter" in § 1109(b) does not exclude from the scope of § 1109(b) lawsuits removed to non-bankruptcy court—like the Phar–Mor/Coopers litigation—which are "related to" a bankruptcy case.

Emergency Rule subsection (h), *cited in* 1 *Collier* ¶ 3.01[1][b][vi]. Thus, at the time *Marin* was decided, the term "adversary proceeding" covered proceedings under, arising in, and related to Chapter 11. *Marin*'s complete silence about the scope of the decision in light of the imminent changes in bankruptcy jurisdiction indicates that the *Marin* panel saw no need to limit the reach of § 1109(b) to cases arising "under" Chapter 11.

Second, the facts in *Marin* would seem to foreclose the argument Phar–Mor and Coopers press here, because *Marin* itself may have extended the right to intervene to an adversary proceeding that was merely "related to" a Chapter 11 case. As we mentioned *supra,* there were two adversary proceedings at issue in *Marin. Marin,* 689 F.2d at 446–447. One of the adversary proceedings sought to extend the pending Chapter 11 case to include the Marins individually and also to include various other Marin companies besides Marin Motor Oil. *Id.* at 447.[17] The complaint alleged that the "various companies had been operated as a single economic unit, without observance of the requisite formalities; that the Marins had 'complete control' over the various companies; that the Marins' personal assets were inextricably intertwined with those of the companies; that Marin Motor Oil financed the other companies; and that the purpose and effect of

forming the other companies was to delay and defraud creditors." *Id.*

■■■ This adversary proceeding, in short, appears to have been a complaint filed by the debtor corporation to pierce its own corporate veil to reach the assets of the Marins.[18] Yet actions by a creditor to pierce the corporate veil, or alter ego actions against the debtor corporation, are often considered non-core, "related to" proceedings. *See Davis v. Merv Griffin Co.,* 128 B.R. 78, 96 (D.N.J.1991) ("this court finds that the so called alter ego action of Davis is not a core proceeding under 28 U.S.C. § 157"). Likewise, a proceeding by a debtor corporation to pierce the corporate veil of an entity against which it holds a judgment is also non-core. *See, e.g., In re Baranello & Sons, Inc.,* 149 B.R. 19, 26 (Bankr.E.D.N.Y.1992).[19]

Moreover, although the proceeding in *Marin* differed from typical alter ego actions because it involved a claim in which the debtor corporation was piercing its own veil, some courts have stated that such actions are also non-core, "related to" proceedings. *See In re Julien Company,* 120 B.R. at 936 ("It is troublesome for the debtor to pierce its own veil and deny its corporate existence and conclude that, as a result [, the third party's] assets belong to the debtor. . . . Piercing the veil is a state law remedy . . . [and hence] an action based upon a veil piercing or alter ego theory could not be a core proceeding."); *In*

---

17. The other proceeding—to impose a constructive trust on the Marins' house—appears to have been a proceeding to determine, avoid, or recover fraudulent conveyances, which would be a core proceeding under 28 U.S.C. § 157(b)(2)(H).

18. The adversary proceeding might have been styled as a "substantive consolidation" (consolidation of more than a single debtor, or a debtor and non-debtor, into a single estate pursuant to the equity powers of the bankruptcy court), in which case it might have been a core proceeding under 28 U.S.C. § 157(b)(2)(A) (administration of the estate). However, *Marin* does not mention that the proceeding was a substantive consolidation, and a substantive consolidation is typically handled as a contested matter not as an adversary proceeding. *See, e.g., In re Augie/Restivo Baking Co. Ltd.,* 860 F.2d 515, 517 (2d Cir.1988); *In re Auto–Train Corp.,* 810 F.2d 270, 273 (D.C.Cir.1987); *In re Julien Co.,* 120 B.R. 930, 936 (Bankr.W.D.Tenn.1990). *But see In re Munford, Inc.,* 115 B.R. 390, 391 (Bankr.N.D.Ga. 1990) (substantive consolidation pursued

through adversary proceeding); *In re Kroh Bros. Dev. Co.,* 117 B.R. 499, 500 (W.D.Mo.1989) (same). Therefore, we think it unlikely that this adversary proceeding was a substantive consolidation.

19. The Second Circuit has suggested that an alter ego action brought by a trustee against third parties to a bankruptcy proceeding is a core proceeding. *St. Paul Fire and Marine Ins. Co. v. PepsiCo, Inc.,* 884 F.2d 688 (2d Cir.1989). In *St. Paul Fire & Marine* the Second Circuit stated that the proceeding was core because "proceedings having the effect of bringing property into the estate of the debtor are core proceedings as defined by section 157(b)." *Id.* at 701. Surely this sweeps too broadly. A debtor corporation's state law breach of contract action against a third party, if successful, will bring property into the estate of the debtor. But such a proceeding is precisely the type of proceeding that is non-core and outside the power of the bankruptcy court to adjudicate.

re Lee Way Holding Co., 105 B.R. 404, 411 (Bankr.S.D.Ohio 1989) (a claim brought by a trustee against a non-debtor defendant based on Ohio alter ego law was an action *related to* a bankruptcy case).[20] Thus, because *Marin* itself allowed the creditors' committee to intervene in a veil piercing or alter ego action, it seems to have interpreted the § 1109(b) right to intervene broadly enough to extend to adversary proceedings "related to" a Chapter 11 case.

Third, even assuming that both adversary proceedings in *Marin* would today be considered "core" proceedings, the principles embodied in § 1109(b), as interpreted by *Marin*, suggest that § 1109(b) reaches "related to" proceedings. *Marin* recognized that § 1109(b) was an important counterweight to the power of the debtor-in-possession during reorganization. When the debtor-in-possession is a corporation, it normally retains possession of the corporation and acts through its officers and directors or management. *See* 11 U.S.C. § 1107(a). Under the 1978 Act, the courts have been relieved of most administrative matters, and the responsibility for monitoring the operations of the debtor and its compliance with appropriate bankruptcy procedures has fallen largely to the creditors' committee (although the United States Trustee has some role). *See* George M. Treister et al., *Fundamentals of Bankruptcy Law* 397 (ALI/ABA 1993).

■ Section 1109(b) is an important monitoring tool at the disposal of the creditors' committee. Intervention under that section appears to be appropriate to the extent it will: (1) minimize the need for extensive judicial oversight, (2) speed the debtor's successful reorganization, and (3) allow the cred-

itors' committee to exert enough leverage on the debtor-in-possession so that the debtor-in-possession does not use its extensive flexibility and discretion in a Chapter 11 reorganization to compromise the creditors' interests. In short, interests of efficiency and fair play underlie § 1109(b), and the driving force behind the *Marin* decision was the belief that allowing intervention into adversary proceedings would best serve those interests. *See Marin*, 689 F.2d at 457.

There is no reason to think that the interests underlying § 1109(b) are limited or should be limited by the jurisdictional limitations imposed on the bankruptcy courts as a result of the *Marathon* decision. The basic problem with the position taken by Phar–Mor and Coopers is that they are trying to use a jurisdictional distinction of "under" and "related to," a distinction shaped by concerns over federalism and separation of powers, to create a limitation on a right to intervene which is defined by concerns over efficiency and fair play. To deny a creditors' committee the right to intervene for no other reason than the jurisdictional changes since *Marin* would be unwise. It would allow Phar–Mor and Coopers to take advantage of fortuitous changes in the allocation of responsibility between the district and bankruptcy courts to create a limitation on a creditors' committee's right to be heard wholly without regard to a creditors' committee's interest in counterbalancing a debtor-in-possession's power in a reorganization.

For the foregoing reasons, we hold that § 1109(b) as interpreted by *Marin* allows creditors' committees to intervene in non-core, "related to" proceedings pending in a federal district court.[21] This conclusion is

---

**20.** It may seem strange to allow a corporation to pierce its own veil, since it cannot claim to be either a creditor that was deceived or defrauded by the corporate fiction, or an involuntary tort creditor. In some states, however, piercing the corporate veil and alter ego actions are allowed to prevent unjust or inequitable results; they are not based solely on a policy of protecting creditors. *See, e.g., Bucyrus–Erie Co. v. General Prod. Corp.*, 643 F.2d 413, 419 (6th Cir.1981) (in Ohio, a court will disregard a corporate fiction whenever its retention will produce injustice or inequitable consequences). *Marin* was a New Jersey case. New Jersey alter ego or veil piercing law is currently based on such a theory and was so

based at the time *Marin* was decided. *See Walensky v. Jonathan Royce Int'l*, 264 N.J.Super. 276, 624 A.2d 613, 617 (App.Div.1993); *Fortugno v. Hudson Manure Co.*, 51 N.J.Super. 482, 144 A.2d 207, 216–17 (App.Div.1958). Because piercing the corporate veil or alter ego causes of action are based upon preventing inequity or unfairness, it is not incompatible with the purposes of the doctrines to allow a debtor corporation to pursue a claim based upon such a theory.

**21.** We also do not believe that *United States v. Nicolet, Inc.*, 84 B.R. 30 (E.D.Pa.1988) (*"Nicolet II"*) helps Phar–Mor and Coopers either. *Nicolet II* does not apply to this case. In *United*

consistent with other courts' interpretations of the reach of *Marin.* *See In re Allegheny International, Inc.,* 107 B.R. 518, 523 (W.D.Pa.1989) ("The *Marin* court construed the term 'case' in § 1109(b) as encompassing not only the general administrative proceeding in a Chapter 11 case, but also adversary proceedings *associated with* a Chapter 11 case." (emphasis supplied)); *In re Lee Way Holding Co.,* 105 B.R. 404, 411 (Bankr. S.D.Ohio 1989) (allowing intervention under § 1109(b) in a non-core proceeding and stating that "[a] creditor's committee has a statutory right to intervene in adversary proceedings *related to* a bankruptcy case." (citing *Marin*) (emphasis supplied)); *cf. 995 Fifth Ave. Assocs., L.P. v. New York State Dep't of Taxation & Fin. (In re 995 Fifth Ave. Assocs., L.P.),* 157 B.R. 942, 951 (S.D.N.Y.1993) ("If the right to intervene in an adversary proceeding [connected with the case] is absolute, such a right would not be limited to matters before the bankruptcy court; it is difficult to see how the same right would not extend to any non-bankruptcy fora in which the adversary proceeding is litigated." (discussing *Marin*)).[22]

## VI. CONCLUSION

Consistent with the *Marin* decision, with other courts' interpretations of the reach of *Marin* (although some may disagree with the result), and the general goals underlying bankruptcy jurisdiction and § 1109(b), we conclude that § 1109(b) as interpreted by

this Court in *Marin* gives a creditors' committee an unconditional right to intervene in a non-core, "related to" proceeding before a federal district court. We therefore hold that the Committee has a right to intervene in the Phar–Mor/Coopers lawsuit currently pending in the Western District of Pennsylvania. The order of the district court denying the Committee the right to intervene will be reversed, and the matter remanded to that Court with directions to enter an order permitting intervention.

RESTANI, Judge, United States Court of International Trade, concurring.

I concur in the result, as *In Re Marin Motor Oil, Inc.,* 689 F.2d 445 (3d Cir.1982), *cert. denied,* 459 U.S. 1207, 103 S.Ct. 1196, 75 L.Ed.2d 440 (1983) is controlling. For the reasons set forth in the latter part of section II of the majority opinion, *supra,* I believe *Marin* was incorrectly decided.

States v. Nicolet, Inc., 857 F.2d 202 (3d Cir.1988) ("*Nicolet I*"), the United States had sued Nicolet under CERCLA, prompting Nicolet to file for bankruptcy. In *Nicolet II,* the creditors' committee moved to intervene as of right in *Nicolet I,* claiming that § 1109(b) gave it an unconditional right to intervene, and its motion was denied. We believe that *Nicolet II* merely suggests that the right to intervene under § 1109(b) will not turn on whether the case is "related to" or "under" Chapter 11, but on whether there is an independent federal right which overrides the interests of creditors to intervene. Such an overriding federal interest existed in *Nicolet II* because, as we said in *Nicolet I* when exempting the CERCLA action from the stay provisions, "enforcement of the environmental laws merits a higher priority than the debtor's rights to a 'cease fire' or the creditors rights to an orderly administration of the estate." 857 F.2d at 202. In

this case, there is no countervailing statutory federal interest that would act as a limit on the creditors' right to be heard.

22. This conclusion is also consistent with the interpretation of *Marin* in leading treatises. *See* 9 *Collier* ¶ 7024.03 ("Some courts have read section 1109(b) as granting an unconditional right to intervene to a section 1109(b) party in interest and have allowed intervention in adversary proceedings under Rule 24(a)(1), reasoning that the reference to 'case' in section 1109(b) encompasses adversary proceedings arising in or *related to* the bankruptcy case." (citing *Marin*) (emphasis supplied)); *see also* Treister et al., *Fundamentals of Bankruptcy Law,* at 399 (*Marin* recognizes an unconditional right of a creditors' committee to intervene in matters "affecting the estate").